UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES R. HOUGHTON,


                            Plaintiff,

                                                    DECISION AND ORDER

                                                    03-CV-6381L

             v.

LIEUTENANT DANIEL CULVER, of the
Orleans County Sheriff's Department, et al.,


                            Defendants.
_____


        Plaintiff, James R. Houghton, commenced this action under 42 U.S.C. § 1983.  He asserts

Fourth Amendment claims for false arrest, unlawful search, and excessive force against defendants

Lieutenant Daniel Culver, Deputy Erin Fuller, and Deputy Ken Strickland ("the officers"), all of

whom were at all relevant times employed by the Orleans County Sheriff's Department.  Defendants

have moved for summary judgment.


                            **BACKGROUND**


        Some of the relevant facts are set forth in a prior Decision and Order of this Court,

familiarity with which is assumed, that granted in part and denied in part defendants' motion to

dismiss.  *Houghton v. Cardone*, 295 F.Supp.2d 268 (W.D.N.Y. 2003).  The record has been fleshed

out somewhat since then, however, so a brief recital of the facts–as viewed in the light most favorable to plaintiff, the nonmoving party–is again warranted.[1]

Early in the evening of September 1, 2000, plaintiff was in the garage of his home in the Town of Ridgeway, near the Village of Medina, New York.  There was an open fire in plaintiff's back yard where plaintiff was burning some brush.

At about 6:15 p.m., Deputy Fuller arrived and told plaintiff that there had been a complaint about the fire and that plaintiff had to put it out.  Plaintiff responded that he lived outside the Medina village limits and there was no fire ordinance in the Town of Ridgeway.  Apparently Fuller satisfied himself that no unlawful activity was occurring, because he left.  A short while later, plaintiff poured some water on the fire and put it out, although it continued to smolder.

About two hours later, two sheriff's cars arrived, containing the defendants.  Fuller walked over to plaintiff, who had come out to the area in front of his garage, and said that he had come to see whether plaintiff had put out the fire.  Plaintiff responded that he had.

Fuller then asked if he could go into plaintiff's back yard and check.  Plaintiff said no. Plaintiff testified that this was a "heated conversation," "because the first [visit from Fuller] got things rolling," and plaintiff was annoyed that defendants were "checking in on [him]."  Dkt. #39-7 at 8.  Plaintiff had also drunk several beers by this point.  *Id.* at 3, 7.

Plaintiff told Fuller that plaintiff would "break his fucking neck if Fuller went back there." Dkt. #39-7 at 9.  Fuller asked if that was a threat, and plaintiff "looked at him, [like] take it the way

---

[1]The facts are mostly taken from the transcript of plaintiff's 50-h Hearing (Dkt. #39-7) that took place on September 26, 2002.  Page references are to the document as filed with this Court, not to the original transcript.

you want to take it." *Id.* Fuller then told plaintiff that he was under arrest for obstruction of justice and told him to turn around.

Plaintiff turned around, and Fuller began putting handcuffs on him behind plaintiff's back. After Fuller had cuffed one of plaintiff's hands, plaintiff turned around to face Fuller, and began stating, "This ain't right," when Fuller sprayed him in the face with pepper spray.  Dkt. #39-7 at 11.

Plaintiff ran into the garage, as Fuller yelled at him to get on the ground.  Plaintiff did so, and put his hands behind his back.  Fuller came over and finished handcuffing plaintiff, giving plaintiff another "quick shot" of pepper spray as plaintiff was lying there.  Dkt. #39-7 at 15.

Plaintiff was then led over to one of the sheriff's vehicles.  He testified that he did not resist going into the car, but that "[n]ext thing [he] kn[e]w, [he was] pinned in the door," with "one officer holding the door shut" and the other two "sticking their hands in there pepper spraying" him.  Dkt. #39-7 at 17-18.

Plaintiff was subsequently arraigned on charges of second-degree assault, resisting arrest, obstructing governmental administration, and harassment.  Plaintiff remained in jail for three days before he was able to post bail.  The charges were eventually dismissed when the grand jury returned a "no bill."

## DISCUSSION

### I. False Arrest

To establish a false arrest claim under § 1983, plaintiff must show that:  (1) defendants intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not

- 3 -

consent to the confinement; and (4) the confinement was not otherwise privileged. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *Donovan v. Briggs*, 250 F.Supp.2d 242, 249 (W.D.N.Y. 2003).  Here, the only dispute centers on the last element, *i.e.*, whether the arrest was supported by probable cause and hence "otherwise privileged."

Although Fuller allegedly told plaintiff that he was under arrest for "obstruction of justice," there is no offense by that name in New York.  Rather, it appears that the charge would have been obstructing governmental administration in the second degree.  New York Penal Law § 195.05 provides in pertinent part that a "person is guilty of obstructing governmental administration when he intentionally ... prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference ... ."

Here, plaintiff clearly attempted to prevent defendants from entering his back yard by means of intimidation.  The question is whether their entry into the yard would have been "an official function" within the meaning of § 195.05.

New York courts interpreting § 195.05 have held that a person is not guilty of violating that statute "unless it is established that the police were engaged in authorized conduct" at the time. *People v. Lupinacci*, 191 A.D.2d 589, 590 (2d Dep't 1993).  *See also Matter of Anthony B.*, 201 A.D.2d 725, 726 (2d Dep't 1994) (juvenile delinquency petition that failed to allege facts, which if true, would establish that the underlying arrest of juvenile by police officer was authorized by law failed to allege facts sufficient to establish all of the essential elements of the crime of obstructing governmental administration in the second degree); *People v. Vogel*, 116 Misc.2d 332, 333 (App.Term, 2d Dep't 1982) ("a defendant cannot be convicted of obstructing governmental administration for interfering with an officer in the performance of an official function unless it be

proved that the official function was an authorized one"); *see also People v. O'Connor*, 257 N.Y. 473, 474 (1931) (warrantless arrest of defendant for a misdemeanor not committed in the presence of the arresting officer was illegally made, and therefore defendant could not be convicted of resisting an officer while "in the performance of his duty").  In the case at bar, then, the issue with respect to false arrest is whether defendants would have been "authorized" to enter plaintiff's back yard to look at the fire (or what was left of it).

The Fourth Amendment provides that individuals shall be free from warrantless unreasonable searches and seizures in their "persons, houses, papers, and effects."  In addition, the Supreme Court has extended Fourth Amendment protections to the curtilage around a house. *Oliver v. United States*, 466 U.S. 170, 180 (1984).  Curtilage is the land surrounding and associated with the home which "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life."  *United States v. Dunn*, 480 U.S. 294, 300 (1987) (internal quotation omitted).

There are only a few exceptions to the rule that the government must obtain a warrant supported by probable cause to intrude into a private dwelling or its curtilage.  *Thompson v. Louisiana*, 469 U.S. 17, 19-20 (1984).  These exceptions to the warrant requirement exist to address circumstances in which the public interest requires there be a more flexible application of the rule. *Arkansas v. Sanders*, 442 U.S. 753, 759 (1979).  Two of these exceptions are voluntary consent to search and exigent circumstances.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Michigan v. Tyler*, 436 U.S. 499, 509 (1978).  *See also Anobile v. Pelligrino*, 303 F.3d 107, 120 (2d Cir. 2002) ("Neither the Supreme Court nor this Court has ever permitted warrantless administrative searches of a person's residence unless:  exigent circumstances exist, business was conducted in the home, or the search was directed at convicted felons still serving sentences of probation or parole").

Exigent circumstances include situations in which law enforcement faces a "need to protect or preserve life or avoid serious injury." *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978). Depending on the degree of danger that it poses, fire can constitute an exigent circumstance. *See, e.g.*, *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) (burning building is exigent circumstance that allows firefighters to enter without a warrant); *United States v. Brooks*, 367 F.3d 1128, 1133 n. 5 (9th Cir. 2004) (exigent circumstances "include the need to protect ... the public from danger, [and] the need to ... respond to fires or other emergencies") (citations omitted), *cert. denied*, 543 U.S. 1058 (2005); *United States v. Green*, 474 F.2d 1385 (5th Cir. 1973) (deputy fire marshal could validly search apartment to determine cause of fire where ascertaining cause was necessary to assure fire was completely extinguished).

Here, I find that there are genuine issues of material fact concerning several issues, and that summary judgment is therefore not warranted.  First, it cannot be determined on this record whether the spot where the fire had been burning was part of the curtilage of plaintiff's home.  Determining whether an area is curtilage requires consideration of four factors:  "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987).  These factors, however, do not constitute "a finely tuned formula." *Id.*

"The inquiry into whether an area can be considered curtilage is fact intensive." *Bleavins v. Bartels*, 326 F.3d 887, 891 (7th Cir. 2003); *accord United States v. Depew*, 210 F.3d 1061, 1067

(9th Cir. 2000).[2]  Depending on the facts, a back yard can be part of a home's curtilage.  *See, e.g.,*

*Bleavins v. Bartels*, 422 F.3d 445, 452 (7th Cir. 2005) ("Areas that are 'intimately connected with

the ... activities' of the home include, for example, backyards") (quoting *United States v. French*,

291 F.3d 945, 952 (7th Cir. 2002)); *United States v. Romero-Bustamente*, 337 F.3d 1104, 1108 (9th

2003) (yard that was small, enclosed, adjacent to and behind defendant's house fell within curtilage

as a matter of law).

       All that the record before me reveals, however, is that plaintiff was burning brush "on [his]

property" and that the fire was visible from his driveway.  Dkt. #39-7 at 3.  Plaintiff's testimony also

indicated that the home of his nearest neighbor in the back was about 450 feet from the fire.  Dkt.

#39-7 at 6.  Given the paucity of this evidence, it is simply impossible to determine as a matter of

law whether the area that defendants intended to search was part of the curtilage of plaintiff's

residence, which could not lawfully be searched without a warrant, absent a recognized exception

to the warrant requirement.  *See Knott v. Sullivan*, 418 F.3d 561, 573 (6th Cir. 2005) (genuine issues

of material fact precluded summary judgment on issue of whether ashes that defendant sheriff's

---

       [2]In *Ornelas v. United States*, 517 U.S. 690 (1996), the Supreme Court held that "the
ultimate questions of reasonable suspicion and probable cause to make a warrantless search
should be reviewed [by appellate courts] *de novo*," *id.* at 691, although courts of appeals are "to
review findings of historical fact only for clear error and to give due weight to inferences drawn
from those facts by resident judges," *id.* at 699.  In the wake of *Ornelas*, the trend among the
circuits appears to be to review the overall curtilage determination *de novo*, but to review a
district court's findings of antecedent fact for clear error.  *See Bleavins v. Bartels*, 422 F.3d 445,
449 n. 4 (7th Cir. 2005) (collecting cases).  The Second Circuit has "assumed, without deciding,
that *Ornelas* requires us to review the district court's finding of curtilage *de novo*, and
specifically to give plenary reconsideration to whether the facts of [the] case satisfy the relevant
legal standard."  *United States v. Reilly*, 91 F.3d 331, 331 (2d Cir. 1996) (per curiam).
       While this suggests that the ultimate issue of the scope of curtilage is to be decided by the
court as a matter of law, it remains true that the court cannot make that determination without an
adequate factual record.  *See Bleavins*, 326 F.3d at 892 ("We find the record as it currently
stands factually inadequate to support a curtilage determination").

deputies searched were located in plaintiff's home's curtilage, for purpose of determining whether search of ashes violated § 1983 plaintiff's Fourth Amendment rights); *Hart v. Myers*, 183 F.Supp.2d 512, 524 (D.Conn.) (issue of fact as to whether deer hangpole was within curtilage of home on recreational property precluded summary judgment in favor of conservation officers on claims that they violated Fourth Amendment in entering curtilage to seize deer and issue hunting citations), *aff'd*, 50 Fed.Appx. 45 (2d Cir. 2002).

Likewise, I cannot determine as a matter of law whether exigent circumstances existed that would have justified a warrantless search.  According to plaintiff, the fire was essentially out, although it may still have been smoldering or smoking when the deputies arrived the second time. Plaintiff also testified that the fire would have been visible from his driveway, which would suggest that defendants could have determined whether it did posed a significant hazard without entering plaintiff's back yard.

What makes summary judgment particularly inappropriate here is that there are no other affidavits from the defendants themselves, nor are there any deposition transcripts, since defendants have never been deposed in this action.  Even if there were such evidence in the record, issues of fact might remain, but as it is, with only plaintiff's testimony before me, I cannot conclude as a matter of law that defendants would have been justified in entering plaintiff's back yard without his consent.  *Menotti v. City of Seattle*, 409 F.3d 1113, 1154-55 (9th Cir. 2005) (issue of material fact as to whether exigent circumstances justified officer's warrantless seizure of protestor's sign precluded summary judgment on protestor's Fourth Amendment claim).  Therefore, I also cannot conclude that defendants' entry into the yard would have constituted "authorized conduct," and

hence whether defendants had probable cause to arrest plaintiff for obstructing governmental administration.[3]

## II. Excessive Force

Use of excessive force during an arrest is judged according to a standard of reasonableness. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   *Graham v. Connor*, 490 U.S. 386, 396 (1989).   This inquiry must be made by considering all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether he actively resisted the arrest.   *Id.*

At the outset, I note that there is some authority from within this circuit that *any* force used in connection with an arrest that is later found to lack probable cause is, by definition, excessive. *See, e.g.*, *Black v. Town of Harrison*, 2002 WL 31002824, at *5-6 (S.D.N.Y. Sept. 5, 2002); *Scott v. Sinagra*, 167 F.Supp.2d 509 (N.D.N.Y. 2001) ("The question of whether the force used was objectively reasonable is made moot if the arrest itself is found to be unlawful.  If the arrest is unlawful, then the force used by the police officer in effecting this unlawful arrest is also unlawful"); *but see Zellner v. Summerlin*, 399 F.Supp.2d 154, 164-65 (S.D.N.Y. 2005) (dispositive inquiry is whether it was reasonable *at the time of the arrest* for the officer to believe that he was justified in

---

[3]I note that the fact that the grand jury returned a "no bill" is not dispositive of the issue of whether defendants had probable cause to arrest plaintiff.  *See Phillips v. Corbin*, 132 F.3d 867, 869 (2d Cir. 1998) ("the grand jury's refusal to indict Phillips does not, as a matter of law, establish that the officers lacked probable cause to arrest her"); *Vonritter v. Town of Bethel, Connecticut*, No. 91-CV-612, 1993 WL 83291, at *3 (N.D.N.Y. Mar.15, 1993) (finding existence of probable cause to arrest although three months later the grand jury returned a "no bill").

using the particular amount of force in question to effectuate what he believed to be a lawful arrest, even if arrest is later found to have been unlawful).  If the Court were to adopt that position in this case, summary judgment would clearly be inappropriate, since the lawfulness of plaintiff's arrest by defendants is still at issue.  I find it unnecessary to decide that issue at this juncture, however, since even if the Court were to apply the objective-reasonableness standard applicable to cases involving lawful arrests, factual issues would preclude summary judgment.

In support of their motion, defendants make much of plaintiff's threat to "break [Fuller's] ... neck" if he went over to look at the fire.  Drawing all permissible inferences in plaintiff's favor, however, I am not convinced that no rational jury could find that the amount of force used by Fuller against plaintiff was excessive.

First, it does not appear that plaintiff's statement would necessarily have conveyed to a reasonable officer in Fuller's position that, when plaintiff made the statement, an assault by plaintiff on Fuller was imminent.  The threat was contingent, a warning not to enter plaintiff's yard.

In addition, what immediately precipitated Fuller's use of force, according to plaintiff, was that plaintiff turned around and began to speak to Fuller as Fuller was handcuffing him.  Accepting as I must the truth of plaintiff's testimony, he simply began telling Fuller that what Fuller was doing to him "[wasn't] right" when Fuller sprayed him in the face.  I am not prepared to rule as a matter of law that Fuller's act was a constitutionally permissible use of force.

Furthermore, even if at that moment Fuller was justified in spraying plaintiff, issues of fact also exist as to Fuller's and the other defendants' alleged subsequent uses of force, such as when Fuller allegedly gave plaintiff another shot of pepper spray as plaintiff was lying on the ground (presumably face down) with his hands behind his back, waiting to be cuffed.  Plaintiff also alleges

- 10 -

that even though he made no attempt to resist getting into the sheriff's car, defendants continued to spray him after he had gotten inside the car.  Again, the Court cannot decide as a matter of law on a motion for summary judgment that the force used was not excessive.  *See Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (genuine issues of material fact as to whether correctional officers used excessive force in tackling and using pepper spray on inmate when they entered cell to subdue cellmate precluded summary judgment on Eighth Amendment claim); *Busch v. City of New York*, No. 00 CV 5211, 2003 WL 22171896, at *6 (E.D.N.Y. 2003) (denying summary judgment for police officer where "[t]here [we]re many disputed elements of fact that play into the issue of whether Defendant Gravitch's use of pepper spray under the circumstances was an excessive use of force in violation of Busch's constitutional rights").

Defendants' contention that "the use of pepper spray became necessary upon Plaintiff's attempt to flee the scene," Defendants' Reply Brief (Dkt. #40) at 10, is also in conflict with plaintiff's testimony.  According to plaintiff's version of the facts, it was Fuller's initial use of pepper spray that *caused* him to run from Fuller in the first place.  He also testified that he had already complied with Fuller's order to get down on the ground when Fuller again sprayed him. This plainly presents issues of fact that cannot be resolved on a motion for summary judgment.

Defendants' argument that New York does not recognize a right to resist an unlawful arrest is also misplaced.[4]  As the Second Circuit has stated, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some*

---

[4]Penal Law § 35.27 provides that "[a] person may not use physical force to resist an arrest [by a police officer], whether authorized or unauthorized ... ."  That section, however, "is concerned with the defense of justification and does not ... make resisting arrest to an unauthorized arrest an offense."  *People v. Peacock*, 68 N.Y.2d 675, 684

- 11 -

degree of force, but it does not give the officer license to use force without limit.  The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000).

### III. Unlawful Search

Plaintiff also alleges that defendants unlawfully trespassed upon and attempted to search his property without a warrant or the presence of any exceptions to the warrant requirement. Defendants contend that such a claim is barred because it is not asserted in the complaint.

The first cause of action in the complaint alleges at Paragraph 14 that defendants "arrived at the Plaintiff's property and without being invited thereon and without any lawful basis, entered and trespassed upon the Plaintiff's property ... ."  In my 2003 Decision and Order, I dismissed that cause of action, which I construed as asserting claims under state law only, as untimely because of plaintiff's tardy filing of a notice of claim.  295 F.Supp.2d at 280.

The only cause of action that survived was the fifth, which is brought under § 1983.  This cause of action simply incorporates by reference all of the allegations that precede it and alleges that defendants' actions violated plaintiff's constitutional rights.  Plaintiff contends that this put defendants on notice that he was asserting a § 1983 claim based upon his allegations of an unlawful search, since the fifth cause of action incorporated by reference the allegations contained in Paragraph 14.

I am not convinced that the facts will ultimately support such a claim, since from plaintiff's own testimony it appears that defendants never did enter his property beyond the immediate area

of his garage.  They *asked* plaintiff if they could go look at the fire, he refused, and within moments

the altercation broke out between plaintiff and Fuller.  Once plaintiff had been subdued, he was put

into a sheriff's car and was taken to jail.[5]

Nevertheless, I do not read my prior decision , which dismissed a *state*-law trespass claim

on purely procedural grounds, as having dismissed an unlawful-search claim under § 1983, and I

see no prejudice to allowing plaintiff to pursue this claim, since it is so factually intertwined with

plaintiff's other claims.  If the evidence at trial does not support such a claim, it can be dismissed

as a matter of law at that time.


**IV. Qualified Immunity**

Defendants contend that even if they are found to have lacked probable cause to arrest

plaintiff, or to have used excessive force against him, they are entitled to summary judgment based

upon qualified immunity.  Qualified immunity shields public officials "from civil damages liability

insofar as their conduct 'does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or

insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those

rights,' *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)."  *Simms v. Village of Albion*, 115 F.3d

1098, 1106 (2d Cir. 1997); *accord Brown v. City of Oneonta*, 106 F.3d 1125, 1130-31 (2d Cir.

1997), *abrogated on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).  Under this

doctrine, then, "a government official may claim immunity from suit ... when in light of clearly

---

[5]It appears that all the defendants left at the same time.  Plaintiff testified that after he had been put in the back of the car, "[t]hey ran me up to Albion, and that was pretty well it."  Dkt. #39-7 at 20.

established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).  In determining whether an official is entitled to qualified immunity, the focus is on "objective circumstances rather than an officer's subjective motivation." *Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir. 1994) (citation omitted).

With respect to false arrest claims, the Second Circuit has stated that "[a]n arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)), *cert. denied*, 505 U.S. 1221 (1992).  A police officer is therefore entitled to qualified immunity from suit if he "reasonably but mistakenly conclude[s] that probable cause is present." *Hunter v. Bryant*, 502 U.S. 224, 227 (1995). "Thus, a police officer who makes a warrantless arrest is entitled to summary judgment on the ground of qualified immunity only 'if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions." *Rogers v. City of Amsterdam*, 303 F.3d 155, 158-59 (2d Cir. 2002) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001)).

An officer can also enjoy qualified immunity from suit on an excessive-force claim, as explained by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001).  The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show that a constitutional violation occurred. *Id.* at 201; *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  In the excessive-force context, the question is whether the alleged use of excessive force was objectively reasonable. *See*

- 14 -

*Graham v. Connor*, 490 U.S. 386, 397 (1989); *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996).  A defendant's contention that he made a reasonable mistake of fact that justified the use of force may be considered at this stage of the analysis.  *Stephenson v. Doe*, 332 F.3d 68, 78 (2d Cir. 2003).

If the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover.  *Saucier*, 533 U.S. at 201.  If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right in question was clearly established at the time of the violation.  *Id.*  This inquiry focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  This analysis adds a "further dimension" to the qualified immunity analysis by acknowledging that "reasonable mistakes can be made as to the legal constraints on particular police conduct."  *Saucier*, 533 U.S. at 205.  It also ensures that "all but the plainly incompetent or those who knowingly violate the law" are protected from suit.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  *Saucier*, 533 U.S. at 200.  In addition, "the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is 'a question of law better left for the court to decide.'"  *Stephenson*, 332 F.3d at 80-81 (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990)).

That "legal determination," however, can only be made when it is undisputed what the law enforcement agent's actions *were* in the first place.  If the facts about what happened are in dispute, summary judgment is inappropriate.  In the excessive-force context, for example, the Second Circuit

- 15 -

has stated that "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal citations and quotation marks omitted). Likewise, in *McClellan v. Smith*, 439 F.3d 137, 147-48 (2d Cir. 2006), the court stated that "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show ... that officers of reasonable competence could disagree on whether the probable cause test was met.'"  (Quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (alteration in original).

Because the underlying facts here are in dispute, or at least not clear from the record before me, I cannot determine that defendants are entitled to qualified immunity.  If, for instance, the configuration of plaintiff's property and the location of the fire were such that it would have been obvious to defendants that they could not lawfully inspect the fire without a search warrant or plaintiff's consent, then they could not reasonably have believed that they had probable cause to arrest plaintiff for obstructing governmental administration.  The fact that plaintiff used a profanity, or that he behaved belligerently, would not justify his arrest if defendants had no authority to conduct a warrantless, nonconsensual search, since there would have been no "authorized" function with which he could have interfered.

Similarly, if in fact plaintiff was simply sitting in the back seat of the sheriff's car after his arrest, and making no attempt to resist, it is difficult to see how defendants could reasonably have believed that it was legal for them to continue spraying him with pepper spray.  Under these circumstances, summary judgment is inappropriate.  *See McClellan*, 439 F.3d at 148-49 (reversing

- 16 -

grant of summary judgment on qualified immunity grounds where issues of fact existed as to whether it was objectively reasonable for officer to believe that probable cause existed to arrest plaintiff for resisting arrest and disorderly conduct); *Curry v. City of Syracuse*, 316 F.3d 324, 337 (2d Cir. 2003) ("genuine issues of material fact exist as to whether Lynch used excessive force in effecting the arrest of Curry, and as to whether Lynch had probable cause to arrest Curry for possession of a controlled substance and/or resisting arrest.  We further conclude that Lynch has not established that he is entitled to summary judgment on the basis of qualified immunity on any of Curry's claims"); *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded"); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("the parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon].  Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment").[6]

---

[6]In opposition to defendants' motion, plaintiff's attorney has submitted an affirmation stating, in part, that defendants have not been deposed, and asking the Court either to deny defendants' motion or to grant plaintiff a continuance, presumably pursuant to Rule 56(f), so that plaintiff can depose defendants.  Although it is not entirely clear why defendants have never been deposed (non-expert discovery in this case was closed as of August 15, 2005, *see* Dkt. #29), plaintiff's request for a continuance is denied as moot.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #32) is denied.

Counsel are directed to contact Magistrate Judge Jonathan W. Feldman within twenty (20)

days to arrange a settlement conference.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      September 21, 2006.